# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GARLAND KNIGHT, | : | |
| Plaintiff, | : | No. 3:18-cv-703 (SRU) |
| | : | |
| v. | : | |
| | : | |
| SCOTT SEMPLE, et al., | : | |
| Defendants. | : | |

## INITIAL REVIEW ORDER REGARDING AMENDED COMPLAINT

Garland Knight ("Knight"), currently confined at MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983 for violating his rights under the Eighth and Fourteenth Amendments and the Double Jeopardy Clause. Before the court could complete the initial review of the Complaint, Knight filed an Amended Complaint. The named defendants in the Amended Complaint are the Municipality of the Department of Correction ("DOC"), Commissioner Scott Semple ("Semple"), Director of Offender Classification and Population Management David Maiga ("Maiga"), Warden Faucher ("Faucher"), Counselor Supervisor D. Doran ("Doran"), Counselor Supervisor Iooizia ("Iooizia"), Hearing Officer Forest ("Forest"), Correctional Counselor D. Crane ("Crane"), and Second Staff Witness on the C11 Form Jane or John Doe ("Doe"). Classification Committee Member Dumas was named in the Complaint but not the Amended Complaint. Thus, the court considers any claims against Dumas to have been withdrawn.

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to

state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I.  Allegations

On January 16, 2018, Knight was sentenced to a term of imprisonment of seven years, execution suspended after two years, to be followed by three years of probation. He was admitted to the Connecticut Department of Correction at Corrigan-Radgowski Correctional Institution. ECF No. 11 at 8, ¶ 1. On January 18, 2018, Knight received his Offender Accountability Plan instructing him to obtain a job and referring him to addiction services. He also received a Classification Review Sheet showing his overall level was 2. *Id.*, ¶ 2.

On January 25, 2018, Doran told Knight that a hearing had been scheduled on January 29, 2018, to determine whether Knight should have a sexual treatment needs score based on non-conviction information. *Id.*, ¶ 3. At the hearing before the Classification Committee, Knight was

2

asked to comment on a 17-year-old police report. Knight denied the allegations in the report. *Id.*, ¶ 4. On January 31, 2018, the Classification Committee assigned Knight a sexual treatment needs score of 3. His Offender Accountability Plan was revised and Knight was transferred to Brooklyn Correctional Institution, a facility specializing in sex offender treatment. *Id.* at 8-9, ¶ 5.

On February 3, 2018, Knight appealed the classification decision. *Id.* at 9, ¶ 6. On February 5, 2018, he attended orientation at Brooklyn Correctional Institution. *Id.*, ¶ 7. Knight's appeal was denied on March 2, 2018. *Id.*, ¶ 9 & ECF No. 1-1 at 11.

II.  Analysis

In the Complaint, Knight argued that the use of a police report that did not result in a conviction for sexual offenses to raise his sexual treatment needs score violated his constitutional rights. He alleged that the defendants denied him due process as guaranteed by the Fourteenth Amendment and were deliberately indifferent to his liberty interest under the Eighth Amendment. He also contended that use of the police report has subjected him to double jeopardy by punishing him for a charge that was nolled in state court. Knight stated that he has named Commissioner Semple as a defendant because he is the "overseer of the Department of Correction." ECF No. 1 at 6. All other individuals have initiated, implemented or upheld the practice of using non-conviction police reports to determine sexual treatment needs scores.

In the Amended Complaint, Knight states that, in addition to the claims in the Complaint, he intends to challenge the classification manual policy as violating his rights under the Eighth Amendment and Double Jeopardy Clause and as violating of the Universal Declaration of Human Rights.

3

A. Due Process

Knight's Eighth and Fourteenth Amendment claims in the Complaint actually are one claim, that the change in classification violated his right to due process of the law. To assert a due process challenge to a classification decision, Knight must show that he had a protected liberty interest in remaining free from the classification and, if he has such an interest, that the defendants deprived him of the interest without affording him due process of law. *See Walker v. Fischer*, 523 F. App'x 43, 44 (2d Cir. 2013) (citing *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001)).

The Second Circuit has held that, if improper classification has a stigmatizing effect, it can implicate a constitutional liberty interest. *See Vega v. Lantz*, 596, F.3d 77, 81-82 (2d Cir. 2010). Vega was challenging his assignment of a sex treatment needs score of "3," *id.* at 80, the same score assigned to Knight. Vega argued that his classification violated his right to due process because he was classified as a sex offender even though he had not been convicted of a sexual offense. He argued that the misclassification "deprived him of a federal constitutional liberty interest in not being falsely stigmatized and a state-created liberty interest in not being labeled as a sex offender absent a criminal conviction." *Id.*

The Second Circuit considered Vega's claim as a constitutional defamation claim. The court noted that, although defamation usually is considered a state-law claim, defamation by government officials may, under certain circumstances, rise to constitutional dimension. *Id.* at 81 (citing *Paul v. Davis*, 424 U.S. 693, 701-10 (1976)). To state a constitutional claim, the plaintiff must "demonstrate 'a stigmatizing statement plus a deprivation of a tangible interest.'" *Id.* (quoting *Algarin v. Town of Wallkill*, 421 F.3d 137, 138 (2d Cir. 2005)).

4

There are two components to a "stigma plus" claim. First, the plaintiff must establish the "stigma" by demonstrating "the utterance of a statement sufficiently derogatory to injure his or her reputation that is capable of being proved false, and that he or she claims is false." *Id.* (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)). Second the plaintiff must demonstrate the "plus," "a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Id.* The "plus" must be something "in addition to the stigmatizing statement." *Id.* Thus, "'deleterious effects [flowing] directly from a sullied reputation,' standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine." *Sadallah*, 383 F.3d at 38 (quoting *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994)).

In *Vega*, the Second Court noted that wrongly classifying an inmate as a sex offender can be stigmatizing. 596 F.3d at 81-82 ("it continues to be the case that wrongly classifying an inmate as a sex offender may have a stigmatizing effect which implicates a constitutional liberty interest") (citing cases). Knight alleges he was assigned the same sexual treatment needs score as Vega and contends that the statement upon which the score was based is false. Because it is possible that the statement could be proven false, the court considers the stigma requirement to be satisfied.

Knight has not, however, alleged any facts satisfying the second component of a "stigma plus" claim. The "plus" must be something more that the consequence of the stigmatizing statement. *Sadallah*, 383 F.3d at 38. *See, e.g., Greenwood v. New York Office of Mental Health*, 163 F.3d 119, 124 (2d Cir. 1998) (identifying the additional deprivation as termination of government employment or deprivation of a property interest such as clinical staffing privileges). For example, a claim that an inmate was labeled mentally ill and transferred from

prison to a mental hospital would be sufficient to support a stigma plus claim. *See Vega*, 596 F.3d at 81.

Knight alleges only that after he received a sexual treatment score of 3, he was transferred to Brooklyn Correctional Institution, a facility housing many sex offenders. Although the notice informing him of the change in score indicated that his new score would be provided to the Board of Pardons and Parole and the staff of Parole and Community Services and Probation, he does not allege that he was required to participate in any special programming or that his failure to do so would prevent release on parole. The only consequences Knight identifies are a direct consequence of his revised score, not something separate from it. Thus, Knight fails to state a cognizable stigma plus claim. *See Toney v. Owens*, 779 F.3d 330, 341 (5th Cir. 2015) (inmate failed to establish "plus" portion of stigma plus test where he was transferred to housing unit where sex offender treatment programs were available, but was not required to participate in the programs); *see also Anthony A. v. Commissioner of Corr.*, 326 Conn. 668, 686 (2017) (adopting this distinction in holding that state habeas court had jurisdiction to entertain due process claim where inmate was classified as sex offender and required to undergo sex offender treatment or risk forfeiting parole eligibility, community release and good time credits).

    B.    <u>Double Jeopardy</u>

Knight argues that the policy is unconstitutional because it violates his right to be free from double jeopardy. The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states by the Fourteenth Amendment, provides that a person shall not "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The Clause

6

protects against both a subsequent prosecution for the same offense after acquittal or conviction as well as multiple punishments for the same offense." *United States v. Hernandez-Fundora*, 58 F.3d 802, 805 (2d Cir.) (internal quotation marks and citation omitted), *cert. denied*, 515 U.S. 1127 (1995). The Double Jeopardy Clause is implicated only in proceedings that are "essentially criminal." *Breed v. Jones*, 421 U.S. 519, 528 (1975). Prison disciplinary and classification proceedings are not criminal prosecutions. *See Wolff v. McDonnell*, 418 U.S 539, 556 (1974); *see also Hernandez-Fundora*, 58 F.3d at 806 (holding that even though sanction may have punitive component, sanction is not necessarily punishment for double jeopardy purposes).

Knight challenges a classification decision and the classification policy. Because prisoner classification is not "essentially criminal," the decision to raise his sexual treatment needs score and the policy under which this was done do not support a double jeopardy claim. *See United States ex rel. Marcus v. Hess*, 317 U.S. 537, 548-49 (1943) (only "actions intended to authorize criminal punishment to vindicate public justice … subject the defendant to 'jeopardy' within the constitutional meaning"); *see also United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 362 (1984) ("Unless the [civil] forfeiture sanction was intended as punishment, so that the proceeding is essentially criminal in character, the Double Jeopardy Clause is not applicable.").

    C.    <u>Universal Declaration of Human Rights</u>

Knight argues that the policy violated his rights under the Universal Declaration of Human Rights. Although this document possesses "moral authority," it does not "impose obligations as a matter of international law." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734-35 (2004) (explaining that the Universal Declaration of Human Rights is an international agreement

7

that does not give rise to legal obligations because it is merely a "statement of principles"); *see also Flores v. Southern Peru Copper Corp.*, 414 F.3d 233, 262 (2d Cir. 2003) (Universal Declaration of Human Rights is non-binding on the United States). Other Circuits and courts within the Second Circuit have held that the Universal Declaration of Human Rights does not provide a basis for a section 1983 claim. *See United States v. Chatman*, 351 F. App'x 740, 741 (3d Cir. 2009) ("[T]he Universal Declaration of Human Rights is a nonbinding declaration that provides no private right of action."); *Huynh Thi Anh v. Levi*, 586 F.2d 625, 629 (6th Cir. 1978) ("[I]t does not appear that the Geneva Convention or the Declaration of Rights are in fact treaties in force in the United States."); *Chinloy v. Seabrook*, No. 14-CV-350 (MKB), 2014 WL 1343023, at *4 (E.D.N.Y. Apr. 3, 2014) (citing cases). This claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

    D.    <u>Facial Challenge to Policy</u>

Knight states that he filed the Amended Complaint to assert a facial challenge to the policy. The Supreme Court has held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Because Knight challenges a long-standing correctional practice, the claim is appropriately addressed under *Turner*. *See, e.g., Haque v. Magnusson*, 2011 WL 1364212, at *17 (D. Me. Apr. 8, 2011) ("constitutionality of prison regulation, whether written, unwritten, publicized or unpublicized, is governed by *Turner*) (citing cases), *report and recommendation adopted,* 2011 WL 1792869 (D. Me. May 11, 2011).

The Supreme Court has held, however, that *Turner* applies whenever "the needs of prison administration implicate constitutional rights." *Washington v. Harper*, 494 U.S. 210, 224

8

(1990). Knight has not alleged facts showing that the policy at issue violated his constitutional rights. Thus, *Turner* is not applicable on these facts and Knight's challenge fails. See *Broadrick v. Oklahoma,* 413 U.S. 601, 610 (1973) ("Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.") (collecting cases).

## CONCLUSION

In accordance with the foregoing analysis, the court enters the following orders:

(1) The claims asserted in the amended complaint are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1). Knight may file an amended complaint if he can allege facts to support the "plus" portion of the stigma-plus test to support his due process claim and his facial challenge to the policy. Any further amended complaint shall be filed within thirty days from the date of this order. Failure to file a timely amended complaint will result in the dismissal of this case without further notice from the court.

(2) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.

So ordered.

Dated at Bridgeport, Connecticut, this 26thth day of September 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge