UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GARLAND KNIGHT,                          :
          Plaintiff,                :
                         :
      v.                              :          CASE NO. 3:18-cv-703 (SRU)
                         :
SCOTT SEMPLE, et al.,                    :
          Defendants.               :

**RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Garland Knight, currently incarcerated in Osborn Correctional Institution and proceeding

*pro se*, filed the instant civil rights action challenging the Department of Correction's use of a

police report that described various sexual offenses in determining his classification.  On May

30, 2019, Knight filed a motion for summary judgment on his due process and equal protection

claims, arguing that he should have been afforded "more procedure" at the hearing on his sexual

treatment need score and that he was discriminated against.  Pl.'s Mem. in Support of Mot. for

Summ. J., Doc. No. 46-1, at 1.  On June 24, 2019, the defendants filed a cross-motion for

summary judgment, maintaining that they did not violate Knight's constitutional rights.[1]  Defs.'

Mem. in Support of Mot. for Summ. J., Doc. No. 48-1, at 1.  For the following reasons, the

defendants' motion is **granted** and Knight's motion is **denied**.

I.     <u>Standard of Review</u>

A motion for summary judgment may be granted only when there is no genuine dispute

of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

---

[1] Although Knight was given an extension of time until September 23, 2019 to respond to the defendants' motion, he has not done so.

56(a).; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113–14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . . ." *Giordano v. Market Am., Inc*., 599 F.3d 87, 93 (2d Cir. 2010).

When ruling on a summary judgment motion, courts must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992). In the context of cross-motions for summary judgment, the same standard is applied. *See Scholastic, Inc. v. Harris*, 259 F.3d 73, 81 (2d Cir. 2001). In deciding each motion, courts must construe the evidence in the light most favorable to the non-moving party. *Id.*

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets that burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He or she cannot "rely on conclusory allegations or unsubstantiated speculation," but rather "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44, 45 (2d Cir. 2015) (citation omitted). To

2

defeat a motion for summary judgment, the nonmoving party must present such evidence as

would allow a jury to find in his or her favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d

Cir. 2000).

Although courts are required to read a self-represented "party's papers liberally 'to raise

the strongest arguments that they suggest,'" *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir.

2015), "unsupported allegations do not create a material issue of fact" and cannot overcome a

properly supported motion for summary judgment, *see Weinstock v. Columbia Univ.*, 224 F.3d

33, 41 (2d Cir. 2000).

## II.    Facts[2]

On January 16, 2018, Knight was sentenced on one count of sale of narcotics and

remanded to the custody of the Department of Correction.  *See* Pl.'s Local Rule 56(a)1 Statement

of Facts, Doc. No. 46, at 4 ¶ 1l; Mem. in Supp. Of Defs' Mot. for Summ. J., at 1.  On January 25,

2018, Knight was notified that a hearing would be held on January 29, 2018 regarding his sexual

treatment need score.  *Id.* ¶ 1(B).  The notification form provided to Knight, entitled

---

[2] The facts are taken from the parties' Local Rule 56(a)1 Statements and the exhibits submitted by the defendants.  Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the moving party's Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party.  Each admission or denial must include a citation to an affidavit or other admissible evidence.  In addition, the opposing party must submit a list of any additional disputed factual issues.  D. Conn. L. Civ. R. 56(a)2 and 56(a)3.  The defendants informed Knight of those requirements.  *See* Notice to Self-Represented Litigant, Doc. No. 48-4.  Knight, however, has not responded to the defendants' statement of facts; accordingly, the defendants' facts are deemed admitted.  *See* D. Conn. L. Civ. R. 56(a)1 ("Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact.").

Moreover, Knight has not cited to admissible evidence in support of any of the statements set forth in his Local Rule 56(a)1 Statement.  *See* D. Conn. L. Civ. R. 56(a)3 ("Each statement of material fact by a movant in a Local Rule 56(a)1 Statement . . . must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial.").  Nonetheless, because the defendants have admitted most of Knight's facts in their Local Rule 56(a)2 Statement, I will accept those statements as true for purposes of the motion.

"Notification of Hearing for Sexual Treatment Need Score Based on Non-Conviction Information," explained that a sexual treatment need score of greater than one is assigned "if an offender has a record or known history of problematic sexual behavior," and that "[n]olled, acquired, dismissed, dropped or withdrawn information which is part of a crime resulting in a conviction may be used to determine the needs score . . . ."  Defs' Local 56(a)1 Statement of Facts, Doc. No. 48-2, at ¶ 7; Ex. A to Defs.' Mem. in Support of Mot. for Summ. J., Doc. No. 48-5, at 2.

The notice further stated that Knight's criminal history indicated that he previously engaged in criminal conduct of a sexual nature, citing specifically to charges of sexual assault in the first degree and sexual assault of a spouse—both of which were nolled in connection with Knight's conviction in November 9, 2000 for charges of assault in the third degree and threatening in the second degree. *Id.*  The notice provided that additional information relied upon was a "Vernon Police Report," which was allegedly attached. *Id.*  The notice warned that Knight therefore "may receive a discretionary Sexual Treatment Need Score," and stated that a hearing was scheduled to "review the reasons for a possible score greater than 1." *Id.*  According to the notice, Knight could provide information about the sexual treatment need score at the hearing. *Id.*

At the January 29, 2018 hearing, the hearing officer noted the specific allegations of sexual assault outlined in the police report.  Defs.' Local Rule 56(a)1 Statement of Facts, Doc. No. 48-2, at ¶ 12.  Knight gave a statement and denied the police report's allegations of sexual assault.  Pl.'s Local Rule 56(a)1 Statement of Facts, Doc. No. 46, at ¶ 1(D); Defs.' Local Rule 56(a)1 Statement of Facts, Doc. No. 48-2, at ¶ 11.

Following the hearing, Knight was assigned a sexual treatment need score of 3VN.

Defs.' Local Rule 56(a)1 Statement of Facts, Doc. No. 48-2, at ¶ 13; Pl.'s Local Rule 56(a)1

Statement of Facts, Doc. No. 46, at ¶ 2.  Both the score and the reason underlying the hearing

officer's decision were communicated to Knight.  Defs.' Local 56(a)1 Statement of Facts, Doc.

No. 48-2, at ¶ 14.  Knight was then transferred to Brooklyn Correctional Institution.  Pl.'s Local

Rule 56(a)1 Statement of Facts, Doc. No. 46, at ¶ 2.  On February 3, 2018, he appealed the

classification decision, which was denied.  *Id.* ¶¶ 2(B)–(D).

III.    Procedural Background

Following initial review of the Knight's first amended complaint, I determined that

Knight's Eighth and Fourteenth Amendment challenges to his classification were effectively the

same claim: a stigma-plus due process challenge to the classification decision.  Initial Review

Order, Doc. No. 22, at 4.  I dismissed all claims, but afforded Knight an opportunity to file a

second amended complaint "if he c[ould] allege facts to support the 'plus' portion of the stigma-

plus test to support his due process claim and his facial challenge to the policy."  *Id.* at 9.

Thereafter, on October 12, 2018, Knight filed a second amended complaint, asserting,

*inter alia*, equal protection and due process claims.[3]  2d Am. Compl., Doc. No. 23.  In the

complaint, Knight identified the "plus" portion of the stigma-plus test as "the consequences that

come with being labeled a sex offender," including: (1) not being able to reach level 2 status,

(2) forfeiting good time, (3) not being eligible for transitional supervision, parole, or a halfway

---

[3] To the extent Knight re-asserted an Eighth Amendment claim in his second amended complaint, as I previously determined, that claim is in effect the same claim as Knight's due process claim, and I construe it as such for purposes of this motion.  The second amended complaint also references an equal protection claim and state tort claims for intentional infliction of emotional distress and abuse of process, which I address below.  2d Am. Compl., Doc. No. 23, at 7, 8.

house, and (4) being viewed as a sex offender upon release from custody. *Id*. at 6. The complaint further alleged that Knight refused to participate in the programming required under his treatment plan and that his refusal permitted the defendants to take Risk Reduction Earned Credit ("RREC"). *Id.*

In my subsequent order, I noted that the allegations were not detailed, but allowed the case to proceed because Knight plausibly alleged the "plus" component of the stigma plus test. *Id.* at 3–4.

IV.    Discussion

A.    Fourteenth Amendment Due Process Clause

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). "A liberty interest may arise from the Due Process Clause itself" or "from an expectation or interest created by state laws or policies." *Id.* To state a procedural due process claim, Knight must show "(1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (quotations and internal citations omitted).

"The Supreme Court and the Second Circuit alike have recognized that the Due Process Clause protects against the Government's use of a false stigma that alters a person's legal status or rights in a tangible manner." *Petitpas v. Martin*, 2018 WL 5016997, at *3 (D. Conn. Oct. 15, 2018) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980), and *Vega v. Lantz*, 596 F.3d 77, 81–82 (2d Cir. 2010)). To succeed on a "stigma-plus" due process claim, a plaintiff must allege: "(1)

the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable

of being proved false, and that he or she claims is false [the stigma], and (2) a material state-

imposed burden or state-imposed alteration of his or her rights or status [the plus]." *Id*. (quoting

*Vega*, 596 F.3d at 81).

In the instant case, Knight contends that he was not afforded adequate process in

connection with his sexual treatment need score hearing.  Although Knight points to no evidence

in support of the "plus" prong, the defendants do not appear to dispute that Knight can establish a

stigma-plus protected liberty interest under the stigma-plus test and instead focus on the process

provided.  *See* Defs.' Mem. in Support of Mot. for Summ. J., Doc. No. 48-1, at 6 ("Accepting

that the case law indicates that the plaintiff may have a liberty interest in his sexual treatment

needs score; the defendants provided the plaintiff a hearing consistent with due process prior to

his STN classification.").  Accordingly, my analysis focuses on the process afforded to Knight,

which entails a separate inquiry.  *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per

curiam* ) ("We first ask whether there exists a liberty or property interest of which a person has

been deprived, and if so we ask whether the procedures followed by the State were

constitutionally sufficient"); *Balentine v. Tremblay*, 554 F. App'x 58, 61 (2d Cir. 2014) ("[T]he

adequacy of the process by which Balentine was placed on the online registry is an inquiry in the

doctrinal analysis distinct from the existence of a 'stigma-plus' liberty or property right.") (citing

*Velez v. Levy,* 401 F.3d 75, 90–91 (2d Cir. 2005)).

The Supreme Court's decision in *Wilkinson v. Austin*, 545 U.S. 209 (2005) is instructive.

There, the Court considered the question of what process is due before prisoners could be

transferred for non-disciplinary reasons to a high-security "Supermax" prison in Ohio, which

subjected the prisoners to indefinite placement in conditions of extreme isolation and deprived

them of "almost any environmental or sensory stimuli and almost all human contact." *Id.* at

214–15.  The Supreme Court held that "the informal, nonadversary procedures" articulated in

*Hewitt v. Helms,* 459 U.S. 460, 473 (1983), abrogated in part on other grounds by *Sandin v.*

*Conner*, 515 U.S. 472 (1995), and *Greenholtz v. Inmatse of Neb. Penal and Correctional*

*Complex*, 442 U.S. 1 (1979)—rather than the more formal, adversary-type procedures in *Wolff v.*

*McDonnell*, 418 U.S. 539, 556–58 (1974)—provided "the appropriate model" for analysis.  *Id.* at

229.  In *Hewitt* and *Greenholtz*, the level of process that the Court held was due included notice

and an opportunity to be heard.  *Id.*

The Court therefore held that Ohio's procedures—which grant the prisoners notice of

their consideration for "Supermax" placement and a "fair opportunity for rebuttal at a hearing"—

were sufficient.  *Id.* at 229.  In so holding, the Court reasoned that the process of assigning

prisoners to the "Supermax" facility drew "more on the experience of prison administrators," and

that the state's interest at issue implicated "the safety of other inmates and prison personnel."  *Id.*

Knight argues that he was entitled to the more formal and adversarial procedural

protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974), which held that advance

written notice, a written statement of the facts and evidence relied on, and, in some cases, the

option to call witnesses and present evidence, are procedural requisites for certain disciplinary

hearings.  Knight appears to argue that *Wolff* governs because the hearing at issue was

disciplinary in nature.  Pl.'s Mem. in Support of Mot. for Summ. J., Doc. No. 46-1, at 3 (stating

that the defendants "used the Outline of a Disciplinary Proceeding").  Knight, however, points to

no evidence suggesting that the hearing was a disciplinary proceeding.  For that reason, and

reviewing the record as a whole, I conclude that a reasonable factfinder could not find that the hearing was disciplinary in nature, and that *Wolff* is thus not controlling here.

Moreover, because the defendants have sufficiently demonstrated that the process of assigning a sexual treatment need score draws "more on the experience of prison administrators" and that the state's interest at issue implicates "the safety of other inmates and prison personnel," I conclude that the analysis here is governed by the Supreme Court's holding in *Wilkinson* and *Hewitt*. Accordingly, "informal, nonadversary procedures" will suffice.

Applying that framework, I further conclude that there is no genuine issue whether "informal, nonadversary procedures" were offered to Knight. As Knight has conceded, the evidence sufficiently demonstrates that Knight was provided with notice of the classification review process, allowed to challenge the classification at a hearing, received notice of the decision and the reason for his sexual treatment need score, and had the opportunity to appeal the decision. Knight cites to no evidence indicating otherwise.

My ruling comports with this district's decision in *Petitpas v. Martin*, 2018 WL 5016997, at *1 (D. Conn. Oct. 15, 2018), which similarly involved a prisoner bringing a due process claim after he was subjected to a higher risk classification because of his sex offense conviction. In dismissing the due process claim, the court reasoned that the prisoner did "not allege that he was not given notice of the classification review process, or that he was not given an opportunity to be heard with respect to why he believes that he should receive a lower risk score, or that he was not given notice of the adverse determination, or that he was not given an opportunity to appeal from the adverse determination." *Id.* at *4.

9

For those reasons, and viewing the evidence in the light most favorable to Knight, I conclude that there is no genuine issue regarding whether Knight received the process to which he was entitled.  Knight's motion for summary judgment is therefore **denied** on the due process claim and the defendants' motion for summary judgment is **granted**.

B.    Equal Protection[4]

The Equal Protection Clause protects individuals from arbitrary or invidious discrimination.  *Petitpas v. Martin*, 2018 WL 5016997, at *5 (D. Conn. Oct. 15, 2018) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40 (1985)).  Absent a classification that burdens a suspect class or the exercise of a fundamental right, however, a government classification among different groups of persons does not run afoul of the Equal Protection Clause if there is any rational basis to support it.  *See Heller v. Doe*, 509 U.S. 312, 319–20 (1993).

Neither prisoners in general nor sex offenders in particular constitute a suspect class.  *See Graziano v. Pataki*, 689 F.3d 110, 117 (2d Cir. 2012).  Thus, Knight, as a prisoner against whom sexual allegations were made, is not a member of a suspect class.  For that reason, and because the classification does not burden the exercise of a fundamental right, rational basis review applies.  *See Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir. 1984) ("[P]rison administrators, when making classifications 'need only demonstrate a rational basis for their distinctions.'") (internal citations omitted).

---

[4] Because I did not explicitly dismiss an equal protection claim in the first or second initial review order, doc. no. 24, I address it here.

For purposes of rational basis review, the Equal Protection Clause "does not demand . . . that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification." *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992).  Instead, a court need only ascertain "that a purpose may conceivably or 'may reasonably have been the purpose and policy' of the relevant governmental decisionmaker." *Id.* (internal citations omitted).  The court must uphold a classification "'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 92 (2d Cir. 2017) (quoting *Heller*, 509 U.S. at 320).

Here, the defendants explain that it is "hardly unusual for an inmate to have multiple areas that need to be addressed that are not explicitly illustrated by viewing an inmate's conviction history," and that reviewing information beyond the conviction "allows for the overall treatment of the person."  Defs' Local 56(a)2 Statement of Facts, Doc. No. 48-2, at 2.  The defendants elaborate that using such additional information in determining security risk and treatment scores allows the Department of Correction to "maintain safety and to address the inmate's treatment and rehabilitative needs."  *Id*. at 4.  In addition, according to the defendants, failing to address those needs could lower a prisoner's chances of successfully reentering the community upon release and increase their changes of endangering public safety.  *Id*. at 2.

Deterrence of crime, rehabilitation of prisoners, and institutional safety have all been recognized as valid penological objectives.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  For those reasons, I conclude that, construing all evidence in the light most favorable to Knight, there is no triable issue regarding whether the policy of determining the sexual treatment need score based on non-conviction information is grounded on a rational basis.  Knight's

motion for summary judgment is therefore **denied** on the equal protection claim and the

defendants' motion for summary judgment is **granted**.

      C.    <u>Facial Challenge to Policy</u>

      To the extent Knight also brings a facial challenge to the classification policy, that claim,

too, cannot survive summary judgment.  The Supreme Court has held that "when a prison

regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably

related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).  *Turner*

applies only when "the needs of prison administration implicate constitutional rights."

*Washington v. Harper*, 494 U.S. 210, 224 (1990).  Because Knight has not sufficiently

demonstrated that the policy at issue violates his constitutional rights, as discussed above, any

facial challenge necessarily fails.

V.    <u>Conclusion</u>

      The defendants' motion for summary judgment [**Doc. No. 48**] is **GRANTED** and

Knight's motion for summary judgment [**Doc. No. 46**] is **DENIED**.  Because I decline to

exercise supplemental jurisdiction over any state law claims, *Lundy v. Catholic Health Sys. of

Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013), those claims are also **dismissed** without prejudice

to refiling in state court. The Clerk is directed to enter judgment in favor of the defendants and

close the case.

      So ordered.

Dated at Bridgeport, Connecticut, this 20th day of April 2020.

                                /s/ STEFAN R. UNDERHILL
                                Stefan R. Underhill
                                United States District Judge